## Case No. 11,415.

### PRICE et al. v. NICHOLAS.

[4 Hughes, 616.] [1]

Circuit Court, W. D. Virginia. May 16, 1878.

LEASE OF MINERAL RIGHTS—FAILURE TO DEVELOP —ABANDONMENT—LAPSE OF TIME—EFFECT OF LESSEE'S FAILURE TO SIGN LEASE.

[1. A complete executed lease of mineral rights for 99 years, renewable for a like term, *held* valid and binding on both parties though signed only by the lessor.]

[2. A lease of mineral rights in certain inaccessible mountain lands for 99 years, renewable for a like term, "to farm," with no specified time in which the lessee was obliged to develop the minerals, *held*, nevertheless, to require him to do so within a reasonable time in view of the circumstances and the situation of the land; and 25 years having already elapsed, and it appearing that a railroad had been projected which would make the lands accessible, *held*, further, that the lessees should be allowed two years more in which to commence operation, in default whereof the lease should be canceled.]

[This was a bill by Price and others, owning certain lands by purchase and conveyance from one Absalom Michael, to set aside the following lease, made by his grantor before complainant purchased the lands: "For value received, I hereby assign all my right, title, and interest for the term of 99 years, also with the privilege of renewal for a like period of time, to all the minerals of whatsoever description that may be found on my land in the county of Augusta, state of Virginia, to A. Nicholas, his heirs and assigns, to farm. The said A. Nicholas, his heirs and assigns, shall have the right of entry on condition that he pays one-fourth of the profits that may be obtained from any mineral on my said lands after deducting interest of the capital stock employed by said A. Nicholas or his heirs and assigns. Witness my hand and seal this 7th day of May, A. D. 1853. Absalom Michael. (L. S.)" The grounds on which it was sought to have the lease declared void were two: (1) That, as the lease was signed only by the lessor, it did not bind the lessee, and was therefore void for want of mutuality; (2) that by the lease the lessee was under obligation to develop and exploit the minerals, and, having utterly failed to do so for a period of 25 years, he had forfeited his rights.]

G. W. Berlin, for complainants.

Oferrall & Patterson, for defendant.

RIVES, District Judge. The plaintiffs appear in this cause under their deed from Absalom Michael of 11th May, 1875, in a double aspect: First, as the owners in fee of the minerals on the land of Absalom Michael; and, secondly, as the assignees of a lease previously given by Michael, to wit, on the 7th day of May, 1853, to the defendant Nicholas. They are now clothed with

[1] [Reported by Hon. Robert W. Hughes, District Judge.]

all the fee-simple proprietorship of Michael over these minerals, with full stipulations for all the privileges necessary to enable them to develop, use, and market them; and, further, with all the rights of the lessor under the aforesaid lease to the defendant. In this situation they find themselves hampered, both as owners and lessors, by this lease, under which nothing has been done for the period of twenty-five years. They file their bill for the rescission of this lease on the allegation of laches in its execution, as well as of want of obligation in Nicholas on grounds specially stated by them. Hence the bone of contention in this case is the construction of this lease and their remedies under it. To be better able to discover both, it is proper to advert to the character of the lands, the origin of these contracts, and the circumstances under which they arose. The land itself is wild, sterile mountain land, indifferently timbered, and of little intrinsic value, save for its hidden resources. A warrant was laid upon it and a patent obtained for it on the 27th January, 1850, by Michael, doubtless because of the discovery of coal adjacent to it. As an evidence of its little value, it is worthy of notice that by an agreement appended to the lease Nicholas had the option at any time within five years to take it at the price of 50 cents per acre. This lease, therefore, was manifestly a matter of mere speculation on the part of both Michael and Nicholas. The former was wholly without the skill or means necessary to explore or develop the hoped-for mines; and the latter, having a fancy for such adventures, could not have contemplated at that time any present chance of availing himself of his lease. The terms of the agreement indicate this very plainly. Michael demands no cash in hand. He could not then fancy it was worth any. He merely stipulates for one-fourth of the profits that may be obtained from the minerals on his lands after deducting interest on the capital stock employed by Nicholas. Nicholas, on his part, offers this consideration alone, because the execution of the contract on his part depended on future events which might justify an outlay, and ensure to both contracting parties a profit in the raising of these minerals. Hence there is no contract fixing a time, within which operations should be commenced, or the license abandoned. There was in 1853 no public work offering transportation to these coals, and without it there was no object to mine for them. No privilege, then, to expire in a few years, was worth the trouble of writing or the fees for recording. Hence it is a lease for 99 years with privilege of renewal for a like period. But it does not follow from this, as has been contended, that Nicholas, his heirs and assigns, have this enormous term to decide whether he will enter upon his lease or not. On the contrary, such a pretension militates against the terms of the contract. He does not take

an assignment of these minerals absolute and without condition, but with an express limitation,—"to farm." He is not to have them as a hidden treasure in the bowels of the earth, alike unprofitable to himself and his lessor. He is not to hold a mere leasehold of intangible real chattels for the purpose of keeping off all other miners for the term of 198 years. By no means. He takes the assignment of these minerals "to farm"; that is to say, to bring them up to light and to commerce and make them profitable to the lessors and himself. No more pregnant or significant term could have been used to exclude the inference that he had the whole term to decide on the commencement of operations. This is a complete, executed contract on the part of Michael, fully obligatory on him and his assigns in this cause. It is not against the statute of frauds. It is good as a deed poll, and the idea that it is not binding on Nicholas, is refuted by his answer in this cause in which he claims its benefits.

But while the acts contemplated by this agreement are all in the future and in their nature executory, there has been no time fixed for the farming of these minerals to commence. But in this as in other contracts of the like nature, reason and authority alike declare that it must be done in a reasonable time. It would be a fraud to insist upon the retention of this privilege for an indefinite time, and as such, would be a good ground for cancellation in a court of equity. But should Nicholas decline after request and reasonable time to enter on the performance of his lease, then it should be in the option of his lessors or assigns to withdraw from the undertaking, and place themselves in the same situation as if it had never been entered into. Add. Cont. marg. p. 35. But the question of what is reasonable time must depend on the circumstances of the case. Michael has acquiesced in the delay of Nicholas. He would have been unreasonable if he had not. These minerals are in the fastnesses of the mountains, and have been wholly inaccessible to commerce. It is only since a railroad has been projected, and partially constructed, to these coal fields, that new interest has been imparted to them, and speculation rife about them. Out of this excitement and speculation has, doubtless, sprung the purchase of the plaintiffs. That it is on the increase, is shown by the great advance that Price, one of the plaintiffs, has realized on his share in this adventure. A good deal of testimony has been taken in this cause. I am not satisfied by it, as claimed by the plaintiffs, that they are damaged by Nicholas' delay; on the contrary, I incline to the opinion that these coals cannot now be profitably mined, as well for the want of demand and uncertainty of supply as for the want of adequate transportation. I am far from allowing that the defendant can hold on to this lease, baffle the owners of the enjoyment of their purchase, and retard the development of these mines in the hands of the plaintiffs, on the plea that he cannot work them profitably, and require them to stand aside till he has every conceivable facility to market. If, after reasonable indulgence, he is not satisfied that the farming of these minerals would be profitable to him, it is his duty to abandon the contract, and allow the proprietors to try their hands at their development or sale free of this incumbrance.

For these reasons, I think, relief should be given to the plaintiffs; but, inasmuch as defendant has not yet had reasonable time, under all the circumstances of this case, to begin the farming of these minerals, he should be allowed the term of two years from the first day of this month to elect whether he will execute or abandon his lease; and in the meantime this cause shall be retained on the docket, so that said contract of lease may be rescinded in case of his failure fairly and bona fide, and with adequate capital and force, to commence operations for the raising and sale of these coals.